## Case No. 11,066.

### The PHEBE.

[1 Ware (302) 368.] [1]

District Court, D. Maine. April 3, 1837.

MONITION TO THE PURCHASER TO PAY THE PURCHASE-MONEY.

1. In proceedings in rem the thing is taken into the custody of the court, and remains in its custody until all claims before the court are finally adjusted and satisfied.

2. The officer in whose hands it is, is the official keeper of the court, and if the thing is taken from him, its redelivery will be enforced by attachment.

[Cited in The Isaac Allerton, Case No. 7,088.]

1 [Reported by Hon. Ashur Ware, District Judge.]

3. It is no objection to the issuing of a summary process, on motion against the person who has taken the thing from the hands of the keeper, that he is neither a party in the cause nor an officer of the court.

4. If after the sale by the marshal on a venditioni, the purchaser obtains possession of the property without paying the price, the court will enforce by summary process either a redelivery of the property in specie, or the payment of the purchase-money.

[Cited in The Witch Queen, Case No. 17,-915; Re Wright, 16 Fed. 485.]

[This was an action for the nonperformance of a contract of the master upon a bill of lading. There was a decree in favor of the libelant and a sale of the vessel thereunder. Case No. 11,064.]

An order having passed on the marshal to pay into the registry the proceeds of the sale of the Phebe [Case No. 11,065], a motion was thereupon made by the counsel for the actor, grounded on the facts which are disclosed by the return on the venditioni and the marshal's answer to the rule, for a monition to Perkins, the purchaser, to show cause why he should not pay to the marshal the balance of the purchase-money which is unpaid.

C. S. Daveis, in support of the motion.
Mr. Longfellow, contra.

WARE, District Judge. The facts upon which this motion has been argued, appear in the return of the marshal on the venditioni, and his answer to the rule upon him to show cause why he should not pay over the proceeds of the sale. By the return it appears that the vessel was sold to Perkins, the respondent, for 370 dollars, who was also the claimant in the original suit, upon a credit of nine months. From the answer, it appears that when Perkins paid over the purchase-money, there was deducted from the amount of the sale, $181.75, for which the marshal received a receipted bill for the same amount of Charles J. Abbot, for wharfage and storage of the vessel and her rigging, while she was in the custody of the law. It was decided on the motion for a rule upon the marshal, that he was not authorized to allow and pay such charges, but that the whole purchase-money, after deducting the necessary expenses of sale, should be brought into the registry, and that all persons having charges or claims against the proceeds must submit them for allowance to the court, before they could be paid. The object of this process is to require the purchaser to pay over the balance of $181.75, which it appears from the marshal's answer is remaining in his hands.

It is objected on the part of the respondent, that the court has no jurisdiction to issue this process against a purchaser at a marshal's sale; that being a mere stranger—for in this proceeding he is regarded as a purchaser only, and not as claimant in the original suit—and having no privity nor connection with any of the previous proceedings in the cause, he cannot be called into court by a rule or citation grounded on motion; but that this process can be applied only to those who are already before the court, as parties to a suit, or to an officer of the court; and that the purchaser is responsible only to the marshal, who alone is liable to a process of this kind. If it be admitted that the objection is well founded as it relates to the practice of courts proceeding according to the course of the common law, it will not necessarily follow that it is equally valid against the issuing of this process by a court which proceeds in rem. Process in rem is founded on a right in the thing, jus in re, and the object of the process is to obtain the thing itself, or a satisfaction out of it for some claim resting on a real or a quasi proprietary right in it. The first step taken by the court is to arrest the thing and take it into its possession and hold it for him who has the right to it; nor does it part with the possession unless when it is delivered on stipulation for its value, which stipulation becomes a substitute for the thing, until the right is adjudicated upon and a satisfaction obtained. Jennings v. Carson, 4 Cranch [8 U. S.] 2; 2 Brown, Civ. & Adm. Law, p. 397. The court holds its possession by its officers, but they are merely the official keepers of the court; and the property, in contemplation of law, is in the custody of the court itself. The officer holds it under the order of the court, he is responsible to the court for it, and is bound to obey and execute all its orders in relation to it. As the court has the legal possession, it necessarily follows that it must have the faculty of defending its possession. It would be an anomalous state of things, if the court, when it takes the res into its custody for the express purpose of securing it for him to whom it shall ultimately be adjudged to belong, could not by its own process maintain and vindicate its possession, should the property by any means become abstracted from the hands of the keeper. Without this power, the jurisdiction in rem could not be exercised with safety to suitors. But this infirmity does not belong to the jurisdiction. If the thing is taken out of the hands of the officer by a stranger, no point of practice is better settled than that the court can compel such person to redeliver it, by attachment or other summary process. Slocum v. Mayberry, 2 Wheat. [15 U. S.] 1; Burke v. Trevitt [Case No. 2,163]. It is not, therefore, a valid objection to the issuing the process asked for, that the person against whom it is asked is neither a party in the cause nor an officer of the court. It is a process that lies against any person who by any means, whether under color of legal process from some other tribunal or without it, has obtained the possession of that which is in the legal custody of the court.

It may be said that after a sale by the marshal on an order of the court, the thing ceases to be in the custody of the law, and that the right of possession, with the right

of property, is transferred to the purchaser. This is perfectly true after the price is paid, but not before. The right of property, jus dominii, is transferred by the contract. The purchaser acquires a right to the thing and the seller to the price, but the purchaser gains no right to the possession but by the payment of the price, nor is the vendor bound to part with the possession until that is paid. If, therefore, the buyer takes the possession before paying the price, it is deemed in law a tortious act, and the remedy of the seller is not limited to an action on the contract for the price; he may maintain trespass for the tort. 2 Kent, Comm. (3d Ed.) 492; Noy, Max. c. 42. If the price is paid, and it is lost or misapplied by the officer, this will not affect the purchaser. The court can then look only to its officer. But if the purchaser obtains the possession without paying the price, I can see no legal reason why the court may not compel either a redelivery of the thing or a payment of the price by the same summary process that it may apply before the sale. The custody of the law continues until the price is paid. There is the same reason for it in one case as in the other; and it seems to me necessarily to result from the fact that the thing is taken into the custody of the court for the purpose of securing the rights of all who have an interest in it. But in the present case the sale was on credit, and when a credit is given, the right of possession as well as the right of property is transferred by the contract, without payment of the price. It is stated, and has not been controverted, as the reason of selling on credit, that no person appeared at the sale to purchase for cash, and that the credit was given with the assent both of the libellant by his agent, and the claimant. But it is to be observed that the marshal was not authorized, either by law or the tenor of the precept to allow a credit on the sale. Now waiving all questions which might be raised as to the validity and effect of a sale made on conditions different from those prescribed by the law and by the precept under which the sale was made, while the thing remains specifically in the hands of the purchaser, and the rights of strangers are not involved, and giving to it all the effect which can be asked for it, the position of the case on the evidence now before the court will be this: The purchaser has acquired the absolute property in the thing, and the term of credit having expired, the proceeds to the amount which he has not paid over to the marshal are in his hands. For the receipted bill which was delivered to the marshal cannot be admitted as payment; in the first place because it does not appear that any thing has been paid on account of it by Perkins. Indeed, much the largest part of it consisted of his own claim for wharfage and storage while the vessel lay at his wharf and the rigging in his store. It was retained, therefore, to satisfy his own claim. And in the second place, because it

was a claim which the marshal had no legal authority to allow, but which must be presented to the court for allowance, after the money is paid into the registry. If the money had been actually paid over by the purchaser, he must be presumed to be acquainted with the law, and to know that it was paid without legal authority. Whatever view is taken of the case, the unpaid balance must be considered as the proceeds in Perkins' hands. Can there be a serious doubt whether the court has the authority to call for this and enforce the payment? It has the same authority to follow the proceeds in whatever hands they may be, and under whatever pretext, that it has to follow the thing in specie. 1 C. Rob. Adm. 331. Having originally taken the property into its custody for the purpose of protecting the rights of all persons having an interest in it or claims upon it. the control of the court over the thing itself, or its proceeds if it has been sold, continues until all these rights have been adjudicated and satisfied. My opinion is, that the order must be made absolute for the payment of $181.75, and in default of payment a writ of attachment, or some other process adapted to the exigency, to issue to enforce the payment.